WILLIAM C. COYLE & others[1] *vs.* CLIFF COMPTON, INC.
& another.[2]

No. 90-P-99.

Middlesex. October 22, 1991. - January 6, 1992.

Present: SMITH, JACOBS, & GILLERMAN, JJ.

*Negligence*, Overhead door, Manufacturer. *Evidence*, Income from collateral source, Safety standards. *Practice, Civil*, Opening statement.

In a negligence action the judge did not abuse his discretion in denying the plaintiffs' motion for a new trial brought on the ground that the defendant's opening statement to the jury contained prejudicial error, where the evidence was not sufficient to demonstrate that the plaintiffs' case had been prejudiced. [748-750]

CIVIL ACTION commenced in the Superior Court Department on February 22, 1985.

The case was tried before *Robert J. Hallisey*, J., and a motion for a new trial was heard by him.

*Marc S. Seigle* for the plaintiffs.

*John B. Cervone, III* (*Patricia Harris Teicher* with him) for city of Waltham.

*Charles W. Goddard* for Cliff Compton, Inc.

GILLERMAN, J. William C. Coyle, an employee of the city of Waltham (city), was injured when he and several fellow employees attempted to repair a broken overhead garage door in the city's maintenance garage. Coyle, together with his wife and children, brought suit against Cliff Compton, Inc. (Cliff), the manufacturer of the door, and the city. The plaintiffs' claims against Cliff, derived from allegations of negligence and breach of warranty, were for Coyle's personal

---

[1] Patricia A. Coyle and the three minor children of Patricia A. Coyle and William C. Coyle.

[2] The city of Waltham.

injuries and for the lost consortium and parental companion-
ship of Coyle's wife and children. The claims against the city
by Coyle's wife and children were limited to the loss of con-
sortium and parental companionship.[3]

In response to the complaint, Cliff filed a cross-claim
against the city seeking contribution from it as a joint
tortfeasor under G. L. c. 231B in the event Cliff was found
liable on the consortium claims.[4] The city responded by filing
a cross claim against Cliff, alleging negligence and breach of
warranty, and seeking reimbursement from Cliff for all
workers' compensation benefits paid Coyle under G. L.
c. 152, and indemnity on the consortium claims. Immedi-
ately before the trial began, the plaintiffs filed a stipulation
of dismissal of their claims against the city "with
prejudice."[5]

---

[3]Claims against an employer for loss of consortium and parental com-
panionship became largely unavailable after December 10, 1985, when St.
1985, c. 572, § 35, amending G. L. c. 152, § 24, became effective. See
St. 1985, c. 572, § 67. Coyle's date of injury was May 11, 1984.

[4]Cliff was not entitled to any contribution or indemnity from the city in
respect of Coyle's claims arising out of his injuries. See *Liberty Mut. Ins.
Co.* v. *Westerlind*, 374 Mass. 524, 526-527 (1978).

[5]It is necessary to comment on the faulty posture of this case as it pro-
ceeded to trial. First, the city was not entitled to assert a cross-claim
against Cliff for reimbursement of workers' compensation benefits it had
paid to Coyle under G. L. c. 152. That claim was, by statute, in the hands
of Coyle, who had already filed suit for the benefit of the city, to the extent
of benefits paid by it to Coyle, and for the benefit of Coyle as to the excess,
if any. Section 15 of c. 152 (1988 ed.) provides that *"[e]ither* the em-
ployee or insurer [i.e., the city] may proceed to enforce the liability" of a
third party (emphasis added). While this provision may well stimulate an
undesirable "race to the courthouse," in order to control the litigation see
Locke, Workmen's Compensation § 669 (2d ed. 1981), it is nonetheless
the law, and in this case, Coyle had won that race.

Second, Cliff was not entitled to seek contribution from the city on the
consortium claims once the plaintiffs had dismissed their consortium
claims against the city with prejudice. G. L. c. 231B, § 4(*b*). Assuming
this stipulation to have been in good faith — as we must, given the circum-
stance of its having been filed with the approval of the trial judge — the
effect of that stipulation was to deprive Cliff of any right of contribution.
*Ibid. Grace* v. *Buckley*, 13 Mass. App. Ct. 1081 (1982).

Thus the city should have been, but was not, dismissed as a party to the
proceedings prior to trial (but preserving its rights to be heard in the event
of a proposed settlement — see G. L. c. 152, § 15), thereby disposing of

The jury, replying to special questions, found that Cliff was not negligent and not in breach of any warranty. The plaintiffs' motion for a new trial was denied, and the plaintiffs claimed an appeal. We affirm.

The plaintiffs' principal argument is that Cliff's opening statement to the jury was prejudicial error requiring a new trial. Cliff's counsel told the jury that he was going to tell them his understanding of "some" of the law in Massachusetts, "[a]nd that is, in Massachusetts a person such as Mr. Coyle is unable to sue his employer or his fellow employees in cases such as this. They are immune from suit. Mr. Coyle . . . has chosen to sue the only party that is now susceptible of suit in this case, which is Cliff Compton. So bear that in mind when you listen to the parties and to the testimony." Plaintiffs' counsel objected at the conclusion of the opening, see *Commonwealth* v. *Johnson*, 374 Mass. 453, 458 (1978) (argument of opposing counsel need not be interrupted), and the judge instructed the jury that statements of counsel were not evidence in the case.

There is strength to the argument that counsel's remarks could be understood by the jury to mean that Coyle had available the relief provided by the workers' compensation law of Massachusetts. If they were so understood, the jury might also conclude that a verdict favorable to the plaintiffs would be a second recovery by Coyle for the same injury.[6] At stake in counsel's remarks, then, was possible prejudice to the plaintiffs' case.

Reference to a collateral source of recovery such as workers' compensation — its existence or nonexistence — in an

---

the cross claims between the city and Cliff. The end result was that Cliff prosecuted its claims for contribution against the city and defended the city's claim against it — thereby contributing substantially to the jury's confusion. See note 8, *infra*, and related text.

[6]The innuendo of possible double recovery, if believed, would have been false; Coyle would be entitled to keep only the excess of any recovery, after deducting the priority payment to the city to reimburse it for all benefits it had paid to Coyle. See G. L. c. 152, § 15 (1988 ed.) ("The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee").

action for negligence is "an immaterial proposition freighted with innuendo. . . ." *Goldstein v. Gontarz*, 364 Mass. 800, 810 (1974).[7] It was for this reason that the court in *Goldstein* instructed the bar and the bench that when "it appears that the question of the mention of coverage will arise in a serious way, counsel where feasible should consult beforehand with the judge as to how the matter should be handled. . . . We welcome careful, cooperative efforts by counsel and trial judges. . . ." *Goldstein supra* at 814.

Coyle's counsel, obedient to the instructions of the court in *Goldstein*, saw the problem in advance and brought it to the attention of the judge by a motion in limine which sought to prevent any reference to Coyle's compensation benefits. The judge did not act — as he should have — on the motion, but the plaintiffs did not object, and the case proceeded to trial. Further, the curative instructions given by the judge following the plaintiffs' objection to the opening remarks — that statements of counsel are not evidence — hardly met *Goldstein*'s requirement that there be an "explanation and clarification" of the workers' compensation law. *Id.* at 811.

Difficulties on this branch of the case increased as the trial progressed. At the charge conference Cliff's counsel sought the judge's approval of his opening comment to the jury. He asked the judge, "[I]s the court going to instruct the jury with regard to the plaintiff's inability under Chapter 152 to sue the city of Waltham, or are we going to just let that

---

[7]On this point — the so-called collateral source rule — the law of Massachusetts is especially stern. In *Goldstein v. Gontarz*, 364 Mass. 800 (1974), the court held, after a detailed discussion of the subject at 807-814, that the nonreceipt of workers' compensation, interjected by the plaintiff in a negligence action, is prejudicial to the defendant requiring a new trial unless "in some way palliated." *Id.* at 808. The palliative is a "strong, even-handed explanation and clarification of the workmen's compensation problem . . . from the judge," *Goldstein supra* at 811. For a case involving prejudice to the plaintiff, see *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 665 (1980). ("Th[e] insinuation of the existence of a possible collateral source of recovery [absent prior approval by the judge] . . . is squarely condemned by our cases [citations omitted].") For an important exception to the collateral source rule see *Corsetti* v. *Stone Co.*, 396 Mass. 1, 16-20 (1985).

dangle?" The judge replied, "I think I'm inclined to just let that dangle. If I say anything about it, I'm going to have to go on and say that he'll have to return to the city whatever they've paid him, but there's no evidence of what they paid him. I'd prefer to just stay away from it."

At this point plaintiffs' counsel said that the problem under discussion was caused by counsel's opening statement, to which the plaintiffs had objected. Cliff's counsel was unrepentant: "I brought it [i.e., the city's immunity] up, of course I did, of course I did." The judge then made the comment, "Yes, yes, I regret that you did that, frankly, but what's done is done."[8] The judge, in his instructions, let the matter "dangle." There was no objection by the plaintiffs, and the case went to the jury.

The jury, not surprisingly, returned with the following questions: "What is the relationship of the city of Waltham to this case? . . . What we need to know is who the defendants are. Are Cliff Compton and city of Waltham codefendants?" Plaintiffs' counsel urged the judge to respond by describing the relationship of the city to the case. The judge said, "Well, they don't need to know that. They don't really need to know — I think it's beyond that. I told you, I think they're really concerned about workmen's comp." Thereupon the judge decided he would respond by saying "The city is not a codefendant, it is a third-party defendant." There was no objection by the plaintiffs. Later that day the jury, in response to special questions, responded that the defendant was not negligent and had committed no breach of warranty.

There is little doubt that, in failing to act on the motion in limine, the judge did not abide by *Goldstein*. Had he done so, Cliff's opening remarks doubtless would not have been made, and the ensuing problems that dogged the trial would not have arisen. Nevertheless, assuming the judge's failure was error, a new trial may not be ordered if the error "does

---

[8]The judge's instructions to the jury did indeed stay away from the city's immunity, other than to comment on the special questions to the jury which inquired whether employees of the city were negligent, and, if so, whether their negligence was the cause of the accident.

not affect the substantial rights of the parties." Mass.R.Civ.P. 61, 365 Mass. 829 (1974). See also G. L. c. 231, § 132. Further, a decision denying a motion for a new trial will not be reversed unless there is a clear abuse of discretion. *Galvin* v. *Welsh Mfg. Co.*, 382 Mass. 340, 343 (1981). *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 664-665 (1980).

Here the questionable remarks occurred only in counsel's opening statement to the jury and were followed by a customary, if not entirely satisfactory, curative instruction. There was no further reference to the subject either in the examination of witnesses or in counsel's summation. Contrast *Goldstein*, 364 Mass. at 812 ("Not only was the point made at the opening; it was rubbed in by testimony of the plaintiff himself, with the judge lending his approval by overruling a specific objection to it"). Moreover the plaintiffs' case was thin — this was a seven year old overhead garage door in obvious need of repair — and the jury squarely answered the specific questions concerning the defendant's culpability in the negative.

The likelihood of material prejudice to the plaintiff's cause in these circumstances was remote. The judge, as noted above, was not unmindful of the possible danger, but in considering the matter he concluded that the "evidence [was] not sufficient to show extraneous material tainted the verdict." The judge did not abuse his discretion in denying the motion for a new trial. See *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. at 664 ("Our deference to the trial judge's role on these motions recognizes the historical antecedents of the power, as well as the principle that its wise exercise is not in derogation of the right of a trial by jury but is one of the historical safeguards of the right").

Finally the plaintiffs argue that the exclusion of opinion testimony concerning standards of installation of overhead doors in 1977 asked of one Gary Scalese, a person in the business of installing and repairing overhead garage doors, was reversible error. The judge ruled that the jury had no need of the information. There was no error. "Where a mat-

ter may easily be comprehended by jurors the testimony of an expert has no place." *Turcotte* v. *DeWitt*, 332 Mass. 160, 165 (1955). In any event the trial judge has wide discretion in such matters. *M. DeMatteo Constr. Co.* v. *Daggett*, 341 Mass. 252, 261 (1960). Further, on cross-examination by the city of Waltham, Scalese testified that he was not aware of any standards for safe installation in 1977.[9]

*Judgment affirmed.*

---

[9]The appeal of Waltham need not be considered for the reasons stated in note 5, *supra.*