NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

11-P-2063                                              Appeals Court

COMMONWEALTH  vs.  JOSE MARTINEZ.

No. 11-P-2063.

Suffolk.     April 10, 2014. - October 29, 2014.

Present:  Grainger, Rubin, & Hanlon, JJ.


Alien.  Constitutional Law, Assistance of counsel, Plea.
    Practice, Criminal, Assistance of counsel, Plea, Affidavit.



    Indictments found and returned in the Superior Court
Department on June 1, 1998.

    A motion for a new trial, filed on September 6, 2011, was
considered by Elizabeth B. Donovan, J., and a motion for
reconsideration was considered by her.


    David Shaughnessy for the defendant.
    Sarah H. Montgomery, Assistant District Attorney, for the
Commonwealth.


    HANLON, J.  The defendant, Jose Martinez, citing Padilla v.

Kentucky, 559 U.S. 356 (2010) (Padilla), appeals from the

denial, without a hearing, of his motion for a new trial on the

grounds of ineffective assistance of counsel, and from the

denial of his motion for reconsideration.  The significant issue

is the appropriate weight to be given to a defendant's failure to produce an affidavit from plea counsel, when the defendant makes a substantial showing that he attempted to obtain such an affidavit and counsel refused to respond. In the circumstances of this case, the defendant was entitled to an evidentiary hearing, with an opportunity to secure plea counsel's presence by subpoena and for the judge to determine any credibility issues based on live testimony. Accordingly, we vacate the orders denying the defendant's motions for new trial and for reconsideration and remand the matter for an evidentiary hearing.

Background. On May 3, 1999, the defendant pleaded guilty in the Superior Court to distribution of a class B controlled substance, in violation of G. L. c. 94C, § 32A(a) (count one),[1] and conspiracy to violate the Controlled Substances Act, in violation of G. L. c. 94C, § 40 (count two).[2] The judge gave the

---

[1] The defendant initially was charged with distribution of a class B controlled substance, in violation of G. L. c. 94C, § 32A(c); that statute provides for a mandatory minimum sentence of one year. At the change of plea hearing, the Commonwealth moved to amend count one, instead charging the defendant under G. L. c. 94C, § 32A(a), which carries no mandatory sentence of imprisonment.

[2] At the plea hearing, the prosecutor told the judge that, on November 25, 1997, the defendant had facilitated a drug transaction between an undercover police officer and a drug dealer for a forty dollar purchase of cocaine; the police officer afterwards paid the defendant ten dollars for his part in setting up the deal.

"immigration warning" required by G. L. c. 278, § 29D, and then asked the defendant where he was born.  The defendant answered that he was born in Guatemala, and the judge responded, "I have no way of knowing what the consequences will be in terms of deportation and all.  That's up to the Federal Naturalization Service and not anything I can control.  You understand you're running the risk, though?"  The defendant responded, "Yes."

The judge then accepted the plea, finding that the defendant was "alert and intelligent and that his plea [was] made voluntarily with full knowledge of its consequences."  He imposed a sentence of two years in a house of correction, with six months to serve and the balance suspended, and two years of probation from and after the incarceration.  Count two, the conspiracy charge, was placed on file with the defendant's consent.  Six months later, on October 12, 1999, the defendant was deported.

On September 6, 2011, the defendant filed a motion for a new trial, seeking to withdraw his guilty plea on the grounds of ineffective assistance of counsel.  In his motion, the defendant alleged that at the time of the plea, "he was affirmatively misinformed by his counsel that the plea and agreed upon sentence would not affect his status as a permanent resident in the United States."  The motion was accompanied by two affidavits, one signed by the defendant and one by Migdalia

Garcia, the mother of his four children. The defendant's affidavit stated that his attorney had "told [him] that [he] would not be deported because [he] would not serve more than one year of committed time under the agreed-upon plea. Specifically, [the attorney] stated to the [defendant]: 'This is between the Superior Court and you. Immigration has nothing to do with it.'" The defendant continued that, although the plea judge had warned that his plea "could have immigration consequences, [he] understood from the conversation with [his] attorney that those consequences would not apply in [his] case."

The defendant's affidavit also stated that he came to the United States in 1977 at the age of seven, and he attended middle school and high school in Boston. At the time of the plea, he was a permanent resident of the United States, he was employed, and he had three children who were United States citizens. His whole family was "here," and he had "no significant ties to any other country." Garcia's affidavit corroborated the defendant's assertion that the attorney had "specifically told [the defendant] that he would not be deported as a result of pleading guilty in this case, which was the determining factor to his decision to plead guilty." In fact,

the plea was grounds for deportation, and the defendant was deported in October, 1999, as a result of the conviction.[3]

The defendant also submitted a third affidavit from one Wendy Wayne, an attorney who described herself as "an immigration law specialist with the Committee for Public Counsel Services." In her affidavit, Wayne explained that under Federal law, "all Massachusetts controlled substance offenses other than

---

[3] On April 6, 2011, the defendant was indicted in the United States District Court for the District of Massachusetts on a charge of illegal reentry into the United States, in violation of 8 U.S.C. § 1326 (2012). On March 16, 2012, after denial of his motion to dismiss that indictment, the defendant pleaded guilty to illegal reentry into the United States. On June 25, 2012, he received a sentence of twenty-one months' imprisonment and twenty-four months' supervised release. He filed a notice of appeal three days later. The record does not indicate the status of that appeal. The Commonwealth suggests that the appeal in the case before us is moot because "vacating the defendant's [S]tate conviction would not necessarily affect his [F]ederal prosecution." As the Commonwealth notes, Federal law in this area is not necessarily clear cut. See United States v. Boliero, 923 F. Supp. 2d 319, 335-336 (D. Mass. 2013) (defendant's motion to dismiss the indictment charging her with illegal reentry under 8 U.S.C. § 1326[a], [b][2], was granted because defendant met all three requirements under § 1326[d] and had shown that a 1992 deportation order, an essential element of the crime with which she was charged, was invalid, and further, the prosecution for illegal reentry was a due process violation where the prosecution was a continuing consequence of a criminal conviction that was vacated ab initio). The Commonwealth argues that the present case is distinguishable. However, because we cannot say what effect vacating the defendant's conviction would have on his Federal prosecution or status in this country, and because the parties have briefed the issues fully, we have addressed the issues raised.

straight possession" were considered "aggravated felonies."[4]  See 8 U.S.C. § 1101(a)(43)(B) (2012).  However, Wayne also stated that some other offenses, including crimes of violence and theft offenses, "become aggravated felonies only upon a conviction AND the imposition of a one year sentence."  See, e.g., 8 U.S.C. § 1101(a)(43)(F), (J), (R), (S) (2012).  In Wayne's experience, "it is a common misperception among criminal defense attorneys that keeping a committed sentence under one year on any offense will avoid an aggravated felony."

The Commonwealth opposed the defendant's motion.  Although conceding that "[h]ere, as in Padilla, it was 'truly clear' that the defendant's crime would render him deportable," the Commonwealth nonetheless maintained that there was no support for the defendant's position, as his own affidavit was "wholly self-serving"; Garcia's affidavit was "replete with hearsay, and . . . merely repeat[ed] what plea counsel and the defendant allegedly discussed prior to the plea"; and Wayne's affidavit was irrelevant, "as she lack[ed] personal knowledge of the defendant's case."  "Most importantly," according to the Commonwealth, "an affidavit from [plea counsel] is suspiciously absent.  Without plea counsel's affidavit, [the judge] cannot

---

[4] As Wayne recited in her affidavit, "[a]n aggravated felony is a special class of deportable crimes that subject a noncitizen to nearly automatic deportation, permanent exile from the U.S. and a bar to almost every form of relief from deportation."  See 8 U.S.C. § 1101(a)(43) (2012).

assess any aspect of his advice to the defendant. Thus, the defendant <u>cannot</u> meet his burden of proving that 'counsel's representation "fell below an objective standard of reasonableness"'" (emphasis supplied).

On November 2, 2011, a judge who was not the plea judge denied the defendant's motion without a hearing. She described the plea judge's discussion of the issue of deportation at the plea colloquy as "painstaking," and observed that "[i]f the defendant was confused between the advice of counsel and the judge's explanation he would have made inquiry as he did with another issue." She noted the absence of an affidavit from plea counsel and described the defendant's affidavit as "self-serving" and Garcia's affidavit as "hearsay." The judge also stated that Wayne's affidavit did "not assist in the analysis for ineffective assistance of counsel," and the judge "adopt[ed] the legal arguments set forth in the Commonwealth's brief and incorporated it by reference." Finally, she determined, without elaboration, that the defendant had not shown prejudice.

The defendant then moved for reconsideration, detailing his new lawyer's attempts to obtain an affidavit from plea counsel, and noting that it was evident from the judge's order that "the pivotal and deciding factor in the [c]ourt's determination that the [d]efendant raised no substantial issue was the absence of an affidavit from [plea counsel]." The motion continued that

new counsel had made considerable effort to secure the affidavit and had been unable to do so.[5]  The motion was supplemented by affidavits from counsel and from his associate.  The judge denied the motion for reconsideration without a hearing or further comment.[6]

Discussion.  "A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30(b)[, as appearing in 435 Mass. 1501 (2001)].  Commonwealth v. Furr, 454 Mass. 101, 106 (2009).  A judge may grant such a motion 'if it appears that justice may not have been done.' Mass. R. Crim. P. 30 (b)."  Commonwealth v. Rodriguez, 467 Mass. 1002, 1004 (2014).  "When, as here, the motion judge did not preside [at the plea hearing] . . . , we regard ourselves in as good a position as the motion judge to assess the . . . record."

---

[5] Specifically, counsel represented to the judge, "During the past five months counsel of record and associate attorneys have spoken to [plea counsel] on several occasions.  [P]lea counsel has stated that he has no recollection of the 1999 proceedings where he represented [the defendant], therefore he cannot confirm nor deny that he told [the defendant] that he would not be deported.  Through repeated telephone calls and numerous letters counsel has attempted to persuade [plea counsel] to sign an affidavit to that effect, which he agreed to do.  However, [plea counsel] has not answered any of [c]ounsel's follow-up letters, and has stopped taking [c]ounsel's telephone calls."

[6] On October 16, 2012, this court allowed the defendant to file late in the Superior Court a notice of appeal as to the denial of both the motion for new trial and motion for reconsideration.

Commonwealth v. Petetabella, 459 Mass. 177, 181 (2011), quoting from Commonwealth v. Grace, 397 Mass. 303, 307 (1986).

"It is well established that a judge has discretion to deny a new trial motion on the affidavits." Commonwealth v. Gordon, 82 Mass. App. Ct. 389, 394 (2012). See Mass.R.Crim.P. 30(c)(3), as appearing in 435 Mass. 1501 (2001). However, when the defendant raises a substantial issue of fact, it is the better practice to conduct an evidentiary hearing. See Commonwealth v. Chatman, 466 Mass. 327, 334 (2013), quoting from Commonwealth v. Stewart, 383 Mass. 253, 257-258 (1981) ("In determining whether a 'substantial issue' meriting an evidentiary hearing . . . has been raised, we look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing on the issue raised"); Commonwealth v. Gordon, supra at 394-395.

Counsel's advice regarding the immigration consequences for a permanent resident tendering a guilty plea to controlled substance charges is a serious issue.[7] See 8 U.S.C. § 1227(a)(2)(B)(i) (2012). Federal law "specifically commands removal for all controlled substances convictions except for the

---

[7] The definition of "controlled substance" is "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of [21 U.S.C. § 812 (2012)]. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986." 21 U.S.C. § 802(6) (2012).

most trivial of marijuana possession offenses."[8]  Commonwealth v. DeJesus, 468 Mass. 174, 180 (2014), quoting from Padilla, 559 U.S. at 368.  "Counsel therefore was obligated to provide to [the defendant] . . . the information that presumptively mandatory deportation would have been the legal consequence of pleading guilty."  Id. at 181.  "Without the benefit of such counsel, a client cannot enter a knowing and voluntary plea." Commonwealth v. Chleikh, 82 Mass. App. Ct. 718, 723 (2012).

The defendant agrees that the case law is replete with comments that, in ineffective assistance claims, the court is entitled to draw a negative inference from the defendant's failure to secure an affidavit from trial or plea counsel.  See, e.g., Commonwealth v. Goodreau, 442 Mass. 341, 354 (2004) ("[T]rial counsel's failure to confirm either of these points speaks volumes.  When weighing the adequacy of the materials submitted in support of a motion for a new trial, the judge may take into account the suspicious failure to provide pertinent information from an expected and available source.  See Commonwealth v. Thurston, 53 Mass. App. Ct. 548, 553-554 [2002]" [emphasis supplied]).  See also Commonwealth v. Leng, 463 Mass.

---

[8] "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in [21 U.S.C. § 802]), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."  8 U.S.C. § 1227(a)(2)(B)(i) (2012).

779, 787 (2012); Commonwealth v. Williams, 71 Mass. App. Ct. 348, 352 (2008), quoting from Commonwealth v. Thurston, supra ("The defendant's claim in his affidavit that trial counsel was ineffective in his preparation is 'conspicuously marred' by his failure to file an affidavit from his attorney, or . . . even [to] indicate that he sought to obtain an affidavit from counsel" [emphasis supplied]).

The Commonwealth argues that "Massachusetts courts should continue -- as a matter of policy -- to draw an adverse inference from an attorney's failure to provide an affidavit to a former client raising an ineffectiveness claim." That goes too far. Certainly, a judge reasonably may draw a negative inference in many such cases and conclude that there is no affidavit from counsel because a truthful affidavit would not assist the defendant. However, other situations are possible. For example, a lawyer who is aware that his assistance some five or ten years earlier was less than exemplary might very well be reluctant to describe that lapse in an affidavit intended for submission to a court where he regularly receives new appointments. In a case such as this one, where successor counsel filed affidavits attesting to plea counsel's lack of cooperation -- including even the failure to return telephone calls -- the lack of an affidavit cannot be a talisman that, by itself, defeats a claim of ineffective assistance of counsel.

To succeed on an ineffective assistance claim, the defendant was required to provide factual support showing that trial counsel's representation fell "measurably below that which might be expected of an ordinary fallible lawyer." Commonwealth v. DeJesus, 468 Mass. at 178, quoting from Commonwealth v. Clarke, 460 Mass. 30, 45 (2011). If this defendant's plea counsel in fact informed him that, so long as he served less than a year of incarceration, he was not likely to be deported, that advice was ineffective at this 1999 plea hearing. "After the 1996 effective date of amendments to the 1952 Immigration and Nationality Act, . . . 'if a noncitizen has committed a removable offense . . . his removal is practically inevitable,' subject to limited exceptions." Id. at 180, quoting from Padilla, 559 U.S. at 363-364. Moreover, Federal law "specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." Ibid., quoting from Padilla, supra.

Both the Commonwealth and the motion judge describe the plea judge's colloquy with the defendant on the issue of deportation as "painstaking." That is not the issue here. While the judge properly administered the "immigration warning" required by G. L. c. 278, § 29D, "such warnings are 'not an adequate substitute for defense counsel's professional obligation to advise [his] client of the likelihood of specific

and dire immigration consequences that might result from such a plea'" Commonwealth v. DeJesus, supra at 177 n.3, quoting from Commonwealth v. Clarke, supra at 48 n.20.

In addition, as noted, the plea judge also stated that he had "no way of knowing what the consequences [would] be in terms of deportation and all. That's up to the Federal Naturalization Service and not anything I can control. You understand you're running the risk, though?" As the court observed in Commonwealth v. DeJesus, supra at 181, "[t]elling the defendant that he was 'eligible for deportation' and that he would 'face deportation' was not adequate advice because it did not convey what is clearly stated in Federal law." Such advice could have "convey[ed] that the law requires additional conditions to be met before an individual could be removed and allows for the exercise of discretion in determining whether those conditions are met." Ibid. In this case, it appears that, in fact, little more was required and, at least in hindsight, that statement from the judge might have undermined even accurate advice from counsel.

Because the motion judge appears to have based her decision in large part on the defendant's failure to produce an affidavit from plea counsel, without appearing to consider the circumstances of that failure, this case must be remanded for an evidentiary hearing on the defendant's motion for a new trial.

The hearing will permit the judge not only to hear from plea counsel, but also to assess first-hand the credibility of the defendant and Garcia.[9,10]

At the hearing after remand, the defendant also will be required to show that the consequence of counsel's serious incompetency was prejudicial. See Commonwealth v. Clarke, 460 Mass. at 47, quoting from Hill v. Lockhart, 474 U.S. 52, 59, (1985) ("In the context of a guilty plea, in order to satisfy the 'prejudice' requirement, the defendant has the burden of establishing that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'").

The decision on the issue of prejudice will be for the motion judge at the hearing. However, on the record before us, we cannot say that the defendant will be unable to meet this burden. His situation -- a United States resident since early childhood, employed with a family, including a common-law wife

[9] Dismissing Garcia's affidavit as "hearsay" is puzzling in light of her representation that she was present during the conversation between the defendant and plea counsel.

[10] In addition, the motion judge stated in footnote that "Attorney Wendy Wayne, Committee for Public Counsel filed an amicus curiae in Clarke and also filed an affidavit in this case which does not assist in the analysis for ineffective assistance of counsel." On this record, it appears to us that informed testimony about regular practice in the Boston trial bar, if found credible, would be at least relevant to the issues to be addressed at the forthcoming hearing.

and three children who were all United States citizens --
compares very favorably with that of the defendant in DeJesus,
and his legal position -- a minor player in a forty dollar
street drug transaction -- compares even more favorably.  As the
prosecutor noted at the time of the plea, this defendant had no
"other previous drug offenses," "the amount of drugs . . . was
minimal," and the defendant's role was minor.  The defendant in
DeJesus, on the other hand, received a straight probation
sentence on a charge reduced from trafficking, one that would
have carried a five-year mandatory minimum sentence.  On this
record, it appears that there is at least a reasonable
possibility that the defendant in the present case would have
chosen to go to trial rather than face "charges that made his
deportation virtually mandatory."  See DeJesus, supra at 179,
quoting from Padilla, supra at 359.

We vacate the orders denying the defendant's motion for a
new trial and for reconsideration and remand this matter for
further proceedings consistent with this opinion.

So ordered.