The defendant, Jorge Quintanilla, was convicted, following a jury trial, of three counts each of rape, statutory rape, and assault and battery by means of a dangerous weapon, and one count of assault and battery. On appeal, he argues that the motion judge abused her discretion in denying his motion for new trial. We affirm.
Background. We summarize the facts as the jury reasonably could have found them. The victim was born in El Salvador on March 25, 1990, and immigrated to the United States in 2003.[2] Shortly thereafter, she met the defendant at a nightclub. She was still thirteen years old when he raped her in her half-sister's home, where she was then living. Her half-sister arrived home and found the defendant with the victim. Thereafter, members of the victim's and the defendant's families assembled and decided that she would move to the defendant's family home to live with the defendant.[3]
Over the next four years, the victim was a virtual prisoner in the defendant's home. The defendant raped her vaginally, anally, and orally on a weekly basis and beat her regularly. She was allowed to leave the house to do chores or run errands for the defendant, but only with permission.[4] She would regularly be given permission to go to the laundromat, grocery store, and liquor store, and to walk the family dog in a park next to the home. She also attended parties, particularly to watch the defendant and his band play.[5]
The defense at trial was that the victim had fabricated the allegations and that the police did not thoroughly investigate the victim's allegations, choosing instead to simply credit her. In furtherance of that strategy, trial counsel elicited testimony showing that the victim's allegations had evolved over time from allegations of physical abuse to allegations of sexual abuse to gang rape and witchcraft. Trial counsel elicited testimony from Officer Michael Mulcahy, the lead police investigator, that the victim first reported only that the defendant physically abused her and only sought an abuse prevention order, which was admitted in evidence. Mulcahy confirmed that the victim did not suggest sexual abuse until almost five months later, in connection with her Sexual Assault Investigative Network (SAIN) interview where she first described the sexual abuse and further alleged that the defendant and his mother were involved in witchcraft. The SAIN interview was admitted into evidence. Trial counsel confirmed with the trial judge that admitting the SAIN interview was part of his strategy.
To support his theory that the police investigation was lackluster, trial counsel had Mulcahy confirm that, in his initial police report, he included the statement that the defendant was a "known admitted [gang] member," which was information provided by the victim and not independently confirmed through an investigation by him or his fellow officers. The report was admitted. Mulcahy also confirmed that the victim was the sole source of information about her date of birth. As trial counsel cross-examined Officer Mulcahy regarding the police report, the trial judge warned him that he was "open[ing] the door," and that the Commonwealth would be allowed to "kick it open," to which he replied, "I understand."
Trial counsel also permitted the victim to testify to the witchcraft allegations ostensibly to demonstrate the incredulous nature of her allegations. Similarly, he allowed the victim to testify that the defendant's mother injected her with birth control from El Salvador, and that the injections once caused her to lose consciousness; when she woke up she was naked with a man on top of her and surrounded by nude men who were exchanging money with the defendant.[6] Trial counsel's approach to Elida Flores, the first complaint witness, and Beatrice Morales, who helped take the victim to a women's shelter after she escaped from the defendant's home, was similar. He elicited hearsay testimony concerning the victim's allegations from an initial claim of physical abuse alone to later allegations of sexual assaults by the defendant, allegations against the defendant's mother and brother, and gang rape. When asked by the trial judge whether he was making a "tactical, strategic decision ... with [his] client's consent," trial counsel responded, "[a]bsolutely."
The defendant's mother informed trial counsel that certain family members could provide testimony contradicting parts of the victim's testimony. Explaining to the trial judge that he was on a "short leash," trial counsel stated that he would make a "very last minute decision to decide whether or not we could at least try to put these people in." Ultimately, he declined to present any defense witnesses.
After the defendant was convicted, he filed a motion for new trial in which he argued that his trial counsel was ineffective because (1) he elicited and permitted the admission of highly prejudicial hearsay evidence from Mulcahy, Flores, and Morales; (2) he failed to introduce typewritten pharmacy records on which the victim's birth year is stated to be 1987-three years earlier than the date to which she testified; and (3) he failed to introduce witnesses who would have testified that the victim was not a prisoner in the family home and appeared happy in her relationship with the defendant. The motion was denied without a hearing. The defendant appealed, and a panel of this court vacated the order denying the motion for new trial and remanded the matter for a hearing. Commonwealth v. Quintanilla, 84 Mass. App. Ct. 1113 (2013).
After remand, the trial judge held a four-day evidentiary hearing, and the defendant called several witnesses in support of his motion. The witnesses were primarily friends, family, and acquaintances of both the defendant and the victim. In sum, the witnesses testified that the victim was treated like a member of the family, was free to leave the home as she pleased, and appeared to be happy in her relationship with the defendant. Each witness also stated that they had not been contacted by trial counsel and would have been willing to testify if asked.[7] The defendant's mother did not testify.
The defendant called a training director at the Committee for Public Counsel Services (CPCS), who opined that trial counsel's performance was ineffective because he elicited prejudicial testimony from Mulcahy, allowed admission of the SAIN interview, and failed to personally interview witnesses who could have contradicted some of the victim's testimony about her relationship with the defendant and his family. She acknowledged, however, that his strategy of eliciting inconsistent statements and exposing the victim's evolving narrative in an effort to undermine her credibility was not unreasonable.
The motion judge, in a thorough and well-reasoned decision, denied the defendant's motion. She found that the cumulative effect of trial counsel's alleged errors fell below the conduct of the ordinary fallible attorney. However, she concluded that the defendant was not prejudiced. This appeal followed.
Discussion. We review the motion judge's ruling for abuse of discretion. Commonwealth v. Cameron, 473 Mass. 100, 104 (2015). Because the motion judge presided at trial, she was in the best position to assess the trial record and the credibility of the witnesses at the motion hearing; thus, we grant her decision "special deference." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). Furthermore, where, as here, the defendant does not submit an affidavit from trial counsel, the defendant's challenge is in its "weakest form."[8] Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). The defendant's claim of ineffective assistance of counsel is reviewed by applying the familiar two-part test: (1) whether the defendant has demonstrated "serious incompetency, inefficiency, or inattention of counsel-behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and (2) if so, whether counsel's poor performance "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
1. Ordinary fallible lawyer. We begin our analysis under the first prong of the Saferian test with trial counsel's decision to elicit otherwise prejudicial and inadmissible testimony. Trial counsel repeatedly confirmed to the trial judge that the decision to elicit and allow admission of this testimony was deliberate and pursuant to his two-fold strategic plan to illustrate that: (1) the victim's testimony was not credible because her story had evolved over time and was incredulous, and (2) the police investigation was incomplete and thus could not be trusted. For example, during a sidebar discussion, trial counsel confirmed to the trial judge that allowing the victim to testify to uncharged conduct was "both a tactical and strategic decision," to which the judge responded, "I've seen enough communication between you and your client that I'm accepting that he's engaged in the process." Trial counsel confirmed, "[h]e certainly is." In executing this strategy, trial counsel elicited hearsay testimony from Mulcahy, Flores, and Morales regarding what the victim had disclosed to them, over time, about her abuse.[9] Taken together, this evidence established that the victim's story evolved from the defendant's physical abuse alone to daily sexual abuse.
Trial counsel allowed the victim to testify to conduct from which no charges were brought, including gang rape, rape by the defendant's brother, witchcraft, and that the defendant's mother drugged her. He confirmed that his decision to permit admission of this evidence was deliberate and tactical. Indeed, while the defendant's expert witness disagreed with particular tactical decisions, she concluded that his general strategy was not unreasonable. See Commonwealth v. Scott, 428 Mass. 362, 369 n.8 (1998) ("Counsel need not be perfect; he must only be effective in presenting the defendant's case"). Notably, the defendant's challenge is in its "weakest form" because trial counsel did not submit an affidavit; all the record shows is that the decisions were made strategically.[10] Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002). Accordingly, the judge did not abuse her discretion in finding that this strategy was not "manifestly unreasonable." Commonwealth v. Finstein, 426 Mass. 200, 203 (1997). See Commonwealth v. McCormick, 48 Mass. App. Ct. 106, 108 (1999) (explaining that where "challenged conduct reflects the arguably reasoned tactical or strategic judgments of a lawyer ... [it is] virtually unchallengeable" [citation and quotations omitted] ).
With regard to the typewritten pharmacy records, although the defendant's affidavit states that his mother gave them to trial counsel, the motion judge found that trial counsel did not have them based on trial counsel's statement, during the trial, that all he had were handwritten medical records, which did not contradict the victim's age. See Commonwealth v. Walker, 443 Mass. 213, 224 (2005) ("A judge's findings of fact after an evidentiary hearing on a motion for a new trial will be accepted if supported by the record"). Having discovered the handwritten medical records after his investigation, trial counsel was entitled to make a strategic choice that a defense based on medical records "was unlikely to succeed and that further investigation was unnecessary." Commonwealth v. Kolenovic, 471 Mass. 664, 675 (2015) (declining to find counsel ineffective even where his "strategic choices did not yield an outcome favorable to the defendant and, in hindsight, he could have done more or made different choices").
More troubling is trial counsel's reliance on the defendant's mother in connection with his investigation as to whether to call any witnesses. Where the defendant's defense depended on undermining the credibility of the victim, it was manifestly unreasonable for trial counsel to rely entirely on the defendant's mother to determine whether to call any of these witnesses. Trial counsel did not reach out personally to any of them. Under the circumstances, trial counsel's investigation fell short of that of the ordinarily fallible lawyer. See Commonwealth v. Alcide, 472 Mass. 150, 160-161 (2015) (counsel ineffective for failing to interview witnesses who had information relevant to a third-party defense). Accordingly, we agree with the motion judge that the defendant has made a sufficient showing under the first prong of the Saferian test.
2. Substantial ground of defense. Turning to the second prong of the Saferian test, we agree with the motion judge that despite trial counsel's failings, the defendant was not deprived thereby of a substantial ground of defense. The witnesses presented at the evidentiary hearing testified that the victim went to the park, ran errands, and attended family parties-information that the victim herself confirmed during the trial. See Commonwealth v. Sarmanian, 426 Mass. 405, 407 (1998) (counsel not ineffective for failing to call additional witnesses to support the defendant's intoxication defense because it was cumulative of intoxication evidence presented at trial). The noncumulative testimony was that the victim was treated well by the defendant's family. At most, this testimony would have served to impeach, which is "not ordinarily the basis of a new trial." Commonwealth v. Almeida, 452 Mass. 601, 616 (2008). Importantly, none rebutted the victim's allegations of physical and sexual abuse, much of which occurred when she was less than sixteen years old.[11]
Order denying motion for new trial affirmed.

She had previously spent several months in the United States, but returned to El Salvador.

The defendant subsequently told the victim that her father sold her for $100 and instructed the defendant to beat her.

The defendant beat her if she left the home without permission.

The defendant's family kept her under surveillance, using a video camera in the living room to monitor her movements.

The trial judge also gave a curative instruction regarding the gang rape allegations, explaining that the jury could not consider that testimony as evidence of the defendant's bad character or as proof that he committed the charged crimes.

Five of the witnesses, however, stated that they were in touch with the defendant's mother who was the family's principal point of contact with trial counsel.

Where, as here, appellate counsel has filed an affidavit attesting to trial counsel's lack of cooperation on appeal, "the lack of an affidavit cannot be a talisman that, by itself, defeats a claim of ineffective assistance of counsel." Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 551 (2014). In this case, however, the omission is particularly notable because trial counsel repeatedly confirmed to the trial judge that the decisions, now complained of by the defendant, were tactical ones.

He specifically confirmed that eliciting this hearsay was strategic.

Trial counsel admitted that his failure to object to hearsay testimony from Flores regarding the defendant's mother's video surveillance was not strategic; however, this mistake is not sufficient to warrant a conclusion that trial counsel's conduct fell below that of the ordinary fallible attorney. Commonwealth v. Marrero, 459 Mass. 235, 246 (2011) (a defendant is not entitled to counsel free of errors).

While some witnesses testified that they thought the victim was older, none could state so definitely.