NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-597

COMMONWEALTH

vs.

NAZARETH PERKINS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant, Nazareth Perkins, was convicted of armed and masked robbery, in violation of G. L. c. 265, § 17.  The Commonwealth filed a nolle prosequi on the habitual offender portion of the indictment and jointly recommended a sentence of fifteen to twenty years in State prison, which the trial judge imposed.  A panel of this court affirmed the defendant's conviction on direct appeal.  See Commonwealth v. Perkins, 98 Mass. App. Ct. 1120 (2020).  The defendant subsequently filed a motion for a new trial, and later, a renewed motion for a new trial, or, in the alternative, a new sentencing hearing, both of which the motion judge denied

in a single order.[1]  On appeal, the defendant argues that the motion judge abused his discretion by denying his motions for a new trial, including by doing so without holding an evidentiary hearing.  We affirm.

Background.  On January 19, 2017, at approximately 8 P.M., the defendant and two other men approached the New Family Market in Dorchester from an alleyway near Humboldt Avenue and Crawford Street.  The defendant wore a mask, maroon hooded sweatshirt, and black pants; a second man, Richard Greene, was unmasked and wore a knit cap; and the third man, who was never identified, wore a mask, green camouflage jacket, and hood.  The defendant was taller than the other two men.  Shortly after the three men entered the market, Greene and the unidentified man pointed firearms at the market workers, telling them not to move.

During the robbery, the defendant pointed to a cash register, at which time a distinctive tattoo of an "Adidas" symbol, located on his right hand, became visible on the market's surveillance video recording.  The robbers took money from cash registers, money from one of the market workers, and a box of cigarettes.  The three men departed the market through a rear doorway that was not typically used by customers, where a

_____

[1] The defendant filed an initial motion for a new trial in December 2023, and he filed the renewed motion in May 2024.

car was waiting for them outside.  The robbers entered the car, and it drove away.

Through subsequent investigation into the armed robbery, the Boston police department (BPD) determined that the defendant had a tattoo on his right hand that resembled the tattoo depicted on the surveillance video recording.  In addition, a BPD database search revealed that out of approximately 1.5 million tattoo images, five people in the database had some form of an Adidas tattoo on their right hand.  Among these people, only one had a height and build similar to the defendant.

The police also learned through cell phone records that the defendant and Greene had twenty-six communications on their cell phones between 3:56 P.M. and 8:51 P.M. on the date of the robbery.  Many of the communications occurred just prior to the robbery but ceased at 7:21 P.M.  There was no such communication between 8 P.M. and 8:11 P.M., which was the time when the robbery and getaway occurred.  Furthermore, the defendant had resided immediately across the street from the market.

Discussion.  We review the denial of the defendant's motion for a new trial for an abuse of discretion.  See Commonwealth v. DeJesus, 71 Mass. App. Ct. 799, 811 (2008).  Under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), a judge may grant a new trial only "if it appears that justice may

3

not have been done" (citation omitted).  Commonwealth v. Fanelli, 412 Mass. 497, 504 (1992).  "'[A] motion for new trial may not be used as a vehicle to compel . . . review and [consideration of] questions of law,' on which a defendant has had his day in an appellate court, or [on which he has] forgone that opportunity" (citation omitted) Commonwealth v. Watson, 409 Mass. 110, 112 (1991).  "If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived."  Rodwell v. Commonwealth, 432 Mass. 1016, 1018 (2000).

Here, except for the ineffective assistance of counsel claim, all of the claims raised by the defendant in both his initial and renewed motions for new trial were knowable and available at the time of the trial or on direct appeal, they are waived.  See Rodwell, 432 Mass. at 1018.  However, "waived claims, no less than preserved claims, are reviewed on appeal." Commonwealth v. Santos, 95 Mass. App. Ct. 791, 795 (2019). However, we review waived claims only to determine if error occurred, and if so, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Randolph, 438 Mass. 290, 293-295 (2002).  "Errors of this magnitude are extraordinary events and relief is seldom granted."  Id. at 297.

4

1.  Tattoo expert.  The defendant argues that his trial counsel was ineffective for failing to call a tattoo expert at trial to conduct a comparison between the defendant's tattoo and the tattoo depicted on the surveillance video footage.[2]  We are not persuaded.

"To prevail on a claim of ineffective assistance of counsel, the defendant ultimately must show that (1) counsel's performance fell measurably below that of an ordinary fallible lawyer, and (2) the defendant suffered prejudice as a result." Commonwealth v. Santana, 497 Mass. 120, 131 n.13 (2026).  If a claim of ineffective assistance "is based on a tactical or strategic decision, however, we apply the more rigorous standard providing that, to be ineffective, the attorney's decision must have been manifestly unreasonable." Commonwealth v. Henderson, 486 Mass. 296, 302 (2020).

"The decision to call, or not to call, an expert witness fits squarely within the realm of strategic or tactical decisions."  Henderson, 486 Mass. at 306, quoting Commonwealth v. Ayala, 481 Mass. 46, 63 (2018).  "Where a party in a criminal trial seeks to offer an expert opinion, the judge, as

_____

[2] The defendant did not provide us any images of his tattoo or of the perpetrator's tattoo in either this appeal or his prior appeal.

gatekeeper, must first determine whether the proponent of the evidence has met the five foundational requirements for admissibility," the first being "that the expert testimony will assist the trier of fact because the information is beyond the common knowledge of jurors." Commonwealth v. Polk, 462 Mass. 23, 31 (2012).

Here, the defendant did not offer an affidavit from trial counsel (or any explanation for the absence of such an affidavit) leaving us to speculate as to the reasons for counsel's decision. See Commonwealth v. Martinez, 86 Mass. App. Ct. 545, 550 (2014) ("in ineffective assistance claims, the court is entitled to draw a negative inference from the defendant's failure to secure an affidavit from trial or plea counsel"). In any event the defendant's argument fails because comparing photographs of tattoos is not beyond the common knowledge and experience of jurors. See Coyle v. Cliff Compton, Inc., 31 Mass. App. Ct. 744, 749-750 (1992) ("Where a matter may easily be comprehended by jurors the testimony of an expert has no place" [citation omitted]). In other words, such testimony would not have been permissible because this "was within an ordinary juror's common experience." Commonwealth v. Walters, 485 Mass. 271, 291 (2020). Accordingly, the defendant's trial

6

counsel did not make a "manifestly unreasonable" decision by not calling an expert.  Henderson, 486 Mass. at 302.

2.  Identification testimony.  The defendant contends that the BPD identified him as one of the robbers through an unduly suggestive identification process.  This argument is misplaced.

> "Where a defendant alleges that witness identifications arise from unnecessarily suggestive circumstances, the defendant has the burden to prove, by a preponderance of the evidence, that the witness was subjected by the State to a pretrial confrontation . . . so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the defendant due process of law" (quotation and citation omitted).

Commonwealth v. Silva-Santiago, 453 Mass. 782, 794-795 (2009).  "In considering whether identification testimony should be suppressed, the judge must examine 'the totality of the circumstances attending the confrontation to determine whether it was unnecessarily suggestive.'"  Id. at 795.

Contrary to the defendant's argument, no witness identified the defendant either in-court or out-of-court or opined that the person in the image from the surveillance video footage was the defendant or that the tattoo matched his.  To the contrary, Detective Juan Diaz described the tattoo that drew police attention and why the police focused their investigation on the defendant.  The jury were presented with evidence of the perpetrator's tattoo and the defendant's tattoo, from which they could make their own comparison.  See Commonwealth v. Phillips,

7

495 Mass. 491, 495 (2025) (jury can "assess for themselves any points of similarity [such as facial features, hair, skin color, build, posture, and height] between the various images in evidence and the person present in the court room").  We discern no substantial risk of a miscarriage of justice.

3.  Jury selection process.  The defendant alleges multiple errors in the jury selection process, arguing that the trial judge abused her discretion by (a) not excusing juror 98 for cause sua sponte and (b) allowing the Commonwealth's peremptory challenges to jurors 94, 31, and 71.  "We afford a trial judge a large degree of discretion in the jury selection process," Commonwealth v. Heywood, 484 Mass. 43, 45 (2020), quoting Commonwealth v. Vann Long, 419 Mass. 798, 803 (1995), and review determinations regarding jury selection for an abuse of discretion.  Id.

a.  Juror 98.  The defendant argues that the trial judge erred by not excusing juror 98 for cause sua sponte on the basis of dishonesty.  He specifically asserts that juror 98 lied about whether he was the victim or perpetrator of a past assault.  We disagree.

During individual voir dire, juror 98 stated twice that his partner was the victim of an assault, and that juror 98 had been arrested for the assault.  At no point did juror 98 claim he was

8

the victim of assault.  Moreover, juror 98 stated that the experience would not affect his impartiality, and the defendant did not exercise a for-cause or peremptory challenge. Accordingly, we discern no abuse of discretion on the part of the trial judge for not sua sponte striking juror 98 for cause. See Commonwealth v. Clark, 446 Mass. 620, 630 (2006) (trial judge's "finding that a juror stands indifferent will not be disturbed except where juror prejudice is manifest").

b.  Peremptory challenges.  The defendant also alleges Batson-Soares[3] violations with respect to juror 94, and -- interpreting his brief generously -- jurors 31 and 71, arguing that the Commonwealth's peremptory challenges were impermissibly based on race.

"The Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights prohibit a party from exercising a peremptory challenge on the basis of race . . . ."  Commonwealth v. Sanchez, 485 Mass. 491, 493 (2020), quoting Commonwealth v. Jones, 477 Mass. 307, 319 (2017).  "A Batson-Soares objection to a proposed peremptory challenge . . . triggers a three-step process."  Henderson, 486

---

[3] See Batson v. Kentucky, 476 U.S. 79, 95 (1986), and Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979), overruled in part by Commonwealth v. Sanchez, 485 Mass. 491, 511 (2020).

9

Mass. at 311.  In the first step, "the challenger 'must make out a prima facie case' that [the challenge] was impermissibly based on race or other protected status 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'"  Commonwealth v. Jackson, 486 Mass. 763, 768 (2021), quoting Johnson v. California, 545 U.S. 162, 168 (2005).  Second, if such a showing is made, "the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it" (citation omitted). Jackson, supra.  "Third and finally, the judge must then determine whether the explanation is both 'adequate' and 'genuine'" (quotation and citation omitted).  Id.  We review each step of the Batson-Soares analysis for an abuse of the discretion.  Id.

    i.  Juror 94.  Juror 94[4] stated that multiple members of her family had been convicted of armed robbery and assault in Boston, but she did not check off the corresponding question on the jury questionnaire to show the same.  She also asserted on the questionnaire that she had kids when she did not.  The defendant objected to the Commonwealth's peremptory challenge,

_____

    [4] The defendant asserts that juror 94 was a Black woman. The record reflects the use of female honorifics and defense counsel referred to her as a "person of color."

10

arguing that juror 94 was the second person of color that had been challenged by the Commonwealth. The trial judge did not find a pattern of discrimination based on juror 94's "answers" and that "she didn't read the question well enough to even get correct whether she had kids; let alone convictions of at least three people in her family on multiple armed robberies." The trial judge nonetheless asked the Commonwealth to state its reasoning, to which the Commonwealth responded that it exercised the peremptory because juror 94 had multiple family members who were tried and convicted of similar offenses in Suffolk County. We discern no abuse of discretion. See Jackson, 486 Mass. at 779 (trial judge did not abuse discretion by allowing Commonwealth's peremptory challenge to prospective juror whose "two children had been involved with the criminal justice system").

ii. Juror 31. Juror 31, a Black man, was initially seated without objection by either the defendant or the Commonwealth. But shortly after juror 31 was seated, a check of his board of probation record showed that he had prior criminal cases that were prosecuted in Suffolk County -- none of which he disclosed on his jury questionnaire. The Commonwealth exercised a peremptory challenge and, before the defendant could object, explained that its challenge was based on juror 31's prior

11

criminal cases having been prosecuted in Suffolk County, and that some of those cases involved drugs and a dangerous weapon. The defendant objected that the Commonwealth's challenge was based on juror 31's race. The trial judge allowed the Commonwealth's challenge. The prosecutor's concern regarding the defendant's failure "to disclose prior involvement with the court system . . . [was] a legitimate one." Commonwealth v. Scott, 98 Mass. App. Ct. 843, 848 (2020). Thus, the trial judge did not abuse her discretion.

iii. Juror 71. Juror 71, a Black man, stated that he had been arrested for driving with a suspended license and for a domestic dispute with his wife in Boston. The Commonwealth exercised a peremptory, which the defendant challenged as impermissibly based on race. The trial judge found that the defendant made a prima facie case, and the Commonwealth explained the challenge was based on juror 71's prior "arrests in criminal cases in Suffolk County." The trial judge overruled the defendant's objection after implicitly finding the Commonwealth's reason was genuine and adequate, stating, "I'm accepting that [this] has nothing to do with [juror 71's] race." Given juror 71's experience with the law in Suffolk County, the judge did not abuse her discretion by denying the defendant's Batson-Soares challenge. See Commonwealth v. Lopes, 478 Mass.

12

593, 601 (2018) (prospective juror's "two significant experiences with the law provided a sufficient and obvious basis for the prosecutor's peremptory challenge").

4.  Sentencing.  The defendant asserts that his sentence of fifteen to twenty years in State prison should be revised due to the disparity between his sentence and Greene's sentence, which was ten to twelve years in State prison.  We disagree.

The proper vehicle for the defendant to request the revision of his sentence is Mass. R. Crim. P. 29 (a) (2), as appearing in 489 Mass. 1503 (2022) -- not a motion for a new trial pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001).

> "Rule 29 (a) (2) provides that '[t]he trial judge, upon the judge's own motion, or the written motion of a defendant, filed within sixty days after the imposition of a sentence or within sixty days after issuance of a rescript by an appellate court on direct review, may, upon such terms and conditions as the judge shall order, revise or revoke such sentence if it appears that justice may not have been done.'"

Commonwealth v. Tejeda, 481 Mass. 794, 795-796 (2019), quoting Mass. R. Crim. P. 29 (a) (2).  The "sixty-day time period established in the rule is absolute and may not be extended." Commonwealth v. Callahan, 419 Mass. 306, 308 (1995).  See Commonwealth v. DeJesus, 440 Mass. 147, 151 (2003) (Rule 29 motion to revise and revoke subject to "jurisdictional requirement that it be filed within sixty days after

13

sentencing," and "judge cannot consider such a motion filed beyond this time frame").

Here, if we construe this portion of the defendant's motion for a new trial as a Rule 29 motion, his motion fails because it was untimely, even if we take the latest of three possible dates to trigger this deadline, this court's rescript on the defendant's direct appeal issued on January 15, 2021. As a result, the defendant needed to file a proper Rule 29 motion by March 16, 2021, or sixty days after issuance. The defendant filed his renewed motion for a new trial on May 21, 2024 -- over three years later.[5] Thus, the defendant's motion was untimely, and the motion judge correctly found that he did not have jurisdiction to consider it.[6]

In any event, the defendant's argument would fail on the merits. The defendant argues that there was an unjust disparity

_____

[5] The defendant did not argue that his sentences should be reduced in his initial motion for a new trial.

[6] As the motion judge noted, the defendant did file a motion to revise or revoke his sentence pursuant to Rule 29 (a) (2) in April 2019. However, that motion did not satisfy the jurisdictional requirements of Rule 29 (a) because it contained no reason that the defendant's sentence should be revised, and the defendant never filed an affidavit accompanying the motion. See DeJesus, 440 Mass. at 152 (judge does not have jurisdiction to consider Rule 29 [a] motion that is not accompanied by affidavit or does not otherwise indicate grounds on which it is based).

14

between his fifteen-to-twenty-year sentence and Greene's ten-to-twelve-year sentence. See Tejeda, 481 Mass. at 796 ("judge may take into account a disparity among the sentences of codefendants"). Here, the defendant was sentenced after being convicted by a jury of the crime of armed and masked robbery. After the Commonwealth dismissed a habitual offender charge, the Commonwealth and the defendant jointly recommended a sentence of fifteen to twenty years, which the trial judge imposed. In contrast, Greene accepted responsibility and pleaded guilty. Moreover, the defendant's claim that Greene had a significant criminal record is not supported by the record. We discern no error.[7]

---

[7] Where none of the defendant's arguments raised a substantial issue, we conclude that the defendant was not entitled to a hearing on his motion for a new trial. See Commonwealth v. Scott, 467 Mass. 336, 344 (2014) ("judge . . . must hold an evidentiary hearing only if the affidavits or the motion itself raises a 'substantial issue' that is supported by a 'substantial evidentiary showing'" [citation omitted]).

Conclusion.  We conclude that that defendant has not established any errors and we discern no miscarriage of justice.

> Order denying motion for new trial and renewed motion for new trial, or in the alternative a new sentencing hearing, affirmed.
>
> By the Court (Henry, Shin & Toone, JJ.[8]),
>
> *Paul Little*
>
> Clerk

Entered:  May 8, 2026.

---

[8] The panelists are listed in order of seniority.